UNITED STATES of America,
Plaintiff-Appellee,

v.

Leroy EDDINGS, Defendant-Appellant.

No. 72–2162.

United States Court of Appeals,
Sixth Circuit.

Argued April 12, 1973.

Decided May 10, 1973.

Pierce Winningham, Jr., Jackson, Tenn., (Court appointed), for defendant-appellant.

Callis L. Childs, Asst. U. S. Atty., Memphis, Tenn., for plaintiff-appellee; Thomas F. Turley, Jr., U. S. Atty., Memphis, Tenn., on brief.

Before PECK, McCREE and KENT, Circuit Judges.

McCREE, Circuit Judge.

Appellant was convicted by a jury of two counts of possession and transportation of non-tax-paid whiskey, in violation of 26 U.S.C. § 5604(a)(1). On appeal, he contends that he was entrapped as a matter of law; that he was denied the opportunity to present an effective defense by the failure of the Govern-

ment to disclose to him, both before and during trial, the name of an informer who allegedly sold him the whiskey; and that the court erred in its charge to the jury and in its refusal of his proffered special instructions.

The Government's first witness at trial was Robert H. Golson, Special Agent of the Alcohol, Tobacco and Firearms Division of the Treasury Department. He testified on direct examination that early in the afternoon of May 22, 1972, he received information from a confidential informer who had (according to Golson) proved reliable in the past that appellant would pick up 50 gallons of liquor on Law Road near Interstate 40, about twelve to fifteen miles east of Jackson, Tennessee. Golson contacted agents Hopkins and Braxton, and the three agents, along with agent Peach and Peach's brother, set up a surveillance that night in the area described by the informer. Agent Golson, on foot, heard a car coming down a side road in the area and radioed agent Peach, in a truck, to follow it. Peach followed the car for about a mile but was then told by Golson to come back because he had heard a car being loaded in the woods nearby. Golson then saw a car come down a side road and onto Law Road, and then travel with its lights off about 100 yards. Golson was then picked up by agent Braxton and the agents began to follow the second car toward the highway. As they came up behind the car, Golson recognized appellant, whom he had arrested before. The cars of agents Braxton and Hopkins followed appellant onto the highway, and the truck of agent Peach succeeded in getting ahead of appellant, and the caravan then proceeded a few miles until the agents decided to make the arrest. The agents stopped the car in which appellant was riding, and arrested appellant and three others—appellant's codefendant Edward Smith and two women. In response to a question by Golson, appellant stated that the liquor was in the trunk. An examination of the trunk revealed 50 gallons of non-tax-paid whiskey. Golson testi-

fied that he did not know who had sold the liquor to appellant.

On cross-examination, Golson testified that he knew nothing of any telephone call to appellant on May 22, and defense counsel then asked him where he had obtained his information about the liquor sale. At this point the Government objected to revealing the name of its informer, and the objection was sustained. Golson thereafter testified that the informer was paid on a contingent basis —the larger the "catch," the larger the fee. The informer did not, Golson stated, indicate to Golson how he had secured his information about appellant's planned purchase of whiskey that night, and did not, to Golson's knowledge, meet with appellant that night. Near the close of cross-examination, defense counsel again asked for the name of the informer, and the court again sustained an objection by the Government.

Following the testimony of agent Golson, agents Peach and Hopkins testified to essentially the same events described by Golson. They knew nothing about the source of Golson's information, and they described their roles in the surveillance and apprehension of appellant. In addition, agent Hopkins read from defendant's police record that Eddings had had two convictions for violating a local liquor ordinance within three years of the trial.

Following the close of the Government's proof, appellant took the stand in his own behalf. He claimed that at 11:00 a.m. on May 22, he received a telephone call from a man he did not know. The caller wanted to meet appellant at a filling station to discuss "selling me this merchandise, which was alcohol." Appellant agreed to meet the man at noon at a filling station in Jackson. The meeting occurred, and the man at the station, whom appellant had never seen before, offered to sell him 50 gallons of whiskey that night. The two agreed to meet at 8:30 that night on Law Road, although appellant testified that he waited until 9:30 to arrive at the meeting-spot in case there was a trap. He

came to the agreed-upon place accompanied by Edward Smith and two women, none of whom, according to appellant, knew that appellant was to pick up whiskey. When he arrived at the designated site, he saw two men, one of whom was the man he had met at the filling station that afternoon. He inspected the liquor and then paid the other man $300. He then loaded the liquor into the trunk of the car and drove off. He testified that he had told no one about his plans to obtain the whiskey.

On cross-examination, appellant freely admitted that he never goes on time to buy liquor because he is wary of traps; that he did not like the Law Road meeting place because "[a] million have been caught on that road"; that agent Hopkins had arrested him "dozens" of times; and that he had planned to sell the whiskey he bought on May 22.

Following appellant's testimony, Edward Smith and the two women who were in the car with appellant on the night of May 22 testified. They indicated that they had no idea that appellant was going to pick up whiskey that night until he began to load the liquor into the car, at which time they began to suspect that they were not merely on a detour to the drive-in movie to which they thought they were headed. They knew nothing about appellant's prior arrangements with the mystery caller.

About two months before trial, appellant moved for an order requiring the Government to furnish him with "the names and addresses of all agents, Federal and State, who participated in the investigation and arrest in this case, including those who contacted this Defendant prior to and at the time of the arrest as a part of the investigation." The court granted the motion, and subsequently denied a motion by the Government to reconsider. Shortly before trial, defense counsel was contacted by telephone by an assistant United States Attorney, who stated that the only names and addresses subject to the discovery order were those of agents Golson, Hopkins, Braxton, and Gary Peach.

The Government accordingly did not supply the name of the informer in response to the court order, and did not claim a privilege for the nondisclosure. The record reveals no reference to this noncompliance at trial, except for appellant's in-trial request for the name of the informer.

As stated above, appellant's only defense was entrapment. The jury convicted appellant on both counts of his indictment but acquitted Edward Smith. Appellant was sentenced to 18 months' imprisonment on one count and three years' probation on the second count, the sentences to run consecutively.

Passing, for the moment, appellant's contention that he was entrapped as a matter of law, we consider his claim that the court erred in refusing to order the Government to disclose to him the name of the informer who had alerted agent Golson. Resolution of this claim is governed by the decision of the Supreme Court in Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L. Ed.2d 639 (1957), in which an informer had notified federal and state agents that he intended to purchase narcotics from the defendant and subsequently made the buy while under police surveillance. The informer was the only person present during the actual exchange of narcotics, although a federal agent was concealed in the trunk of the car in which the exchange took place. In holding that the trial court had erred in refusing to require the Government to divulge the name of the informer upon request of the defense, the Court stated:

A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action. . . .

\*   \*   \*   \*   \*   \*

We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

353 U.S. at 60–62, 77 S.Ct. at 628–629. As the Court has more recently put it, the informer's "identity cannot be concealed from the defendant when it is critical to his case." Branzburg v. Hayes, 408 U.S. 665, 698, 92 S.Ct. 2646, 2664, 33 L.Ed.2d 626 (1972). *See also* McCray v. Illinois, 386 U.S. 300, 310–311, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967).

We have twice applied the above test either to reverse a district court's decision not to require the Government to disclose the name of its informer or to require a court to hold an *in camera* hearing to determine whether the circumstances of the case dictated disclosure. United States v. Barnett, 418 F.2d 309 (6th Cir. 1969); United States v. Lloyd, 400 F.2d 414 (6th Cir. 1968). In both cases the informer was an eyewitness to, and in fact a participant in, the exchange of contraband by the defendant seller (*Barnett* involved moonshine; *Lloyd* involved narcotics). In both the sales were witnessed by Government agents who were the key prosecution witnesses at trial. In *Lloyd,* the defendant asserted that she did not have the requisite guilty knowledge; in *Barnett,* the defendant sought the opportunity to controvert the Government agent's version of the transaction. We held in *Barnett* that the informer's testimony would likely have been relevant and helpful to the defense and, accordingly, that the informer's privilege had to give way. In *Lloyd* we

remanded for a determination whether in fact the informer's testimony would have been relevant and helpful.

Appellee urges that the facts of this case are sufficiently distinguishable from those in *Barnett* and *Lloyd* to justify refusal to divulge the informer's identity in this case. Specifically, the Government contends that there is no proof that the informer who gave agent Golson the tip about appellant was the person from whom appellant bought the whiskey. Golson testified that he did not know who had sold appellant the whiskey, and he stated that he knew nothing about any telephone call appellant might have received on May 22.

We are unpersuaded by appellee's argument. First, it ignores appellant's uncontroverted testimony that he told no one about the proposed transaction and that the deal was made at noon on May 22. Thus, either the informer was the person with whom appellant negotiated and then consummated the sale or else he was in such close contact with that person that the inference arises that the two were working together. Second, if the seller of the liquor was not the informer, there is no evidence in the record to explain why the agents did not seek to apprehend the seller or at least to ascertain his identity. There is testimony that a car emerged from the woods near Law Road shortly before appellant's car did, and that agent Peach followed this car for a few minutes until he was told that it was not Eddings' vehicle (which agent Golson knew because he allegedly heard car doors and a trunk slam). It is logical to suppose that if the agents were in doubt about the identity of the seller, they would have attempted to discover who was driving this other vehicle, would have attempted to surveil the actual sale, or would otherwise have attempted to trap all parties to the exchange, yet the agents evinced no concern about the source of the whiskey.

■■■ Further, if the informer truly had nothing to do with the actual negotiation and consummation of the sale—a

fact peculiarly within the capacity of the Government to establish—evidence of this could have been presented to the District Court *in camera* so that it would have been clear that the informer had nothing to offer that would have been relevant and helpful to the entrapment defense. Instead, the Government refused to comply with a pretrial discovery order that it reveal the names of all the agents who participated in the investigation of the case, and it objected at trial to disclosing the name of the informer without citing any reason other than the need to protect the confidentiality of its sources. When the evidence suggests, as here, that it is reasonably probable that the informer can give relevant testimony, the burden should be on the Government to overcome this inference with evidence that the informer cannot supply information material to the defense. *See* United States v. Skeens, 145 U.S.App.D.C. 404, 449 F.2d 1066, 1072 (1971) (Bazelon, C. J., dissenting); Rules of Evidence for United States Courts and Magistrates rule 510(c)(2) (1972).

Notwithstanding the foregoing, and despite the failure of the Government to come forward with any evidence of the lack of materiality of the informer's testimony, we conclude that the court did not err in refusing to order disclosure. Not only do we disagree with appellant's argument that the proof established entrapment as a matter of law, we believe that the proof approaches establishing predisposition as a matter of law. Appellant appears to be under the impression that entrapment is established if the accused shows only that the criminal scheme originated in the mind of the Government agent. Such is not the law. In Sorrells v. United States, 287 U.S. 435, 451–452, 53 S.Ct. 210, 216, 77 L.Ed. 511 (1932), the Court stated that

> the defense of entrapment is not simply that the particular act was committed at the instance of government officials. That is often the case where the proper action of these officials leads to the revelation of criminal enterprises. . . . The predisposition and criminal design of the defendant are relevant. But the issues raised and the evidence adduced must be pertinent to the controlling question whether the defendant is a person otherwise innocent whom the government is seeking to punish for an alleged offense which is the product of the creative activity of its own officials. If that is the fact, common justice requires that the accused be permitted to prove it. The government in such a case is in no position to object to evidence of the activities of its representatives in relation to the accused, and if the defendant seeks acquittal by reason of entrapment he cannot complain of an appropriate and searching inquiry into his own conduct and predisposition as bearing upon that issue. If in consequence he suffers a disadvantage, he has brought it upon himself by reason of the nature of the defense.

"To determine whether entrapment has been established, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal." Sherman v. United States, 356 U.S. 369, 373, 78 S.Ct. 819, 821, 2 L.Ed.2d 848 (1958).

In this case, appellant readily admitted on direct examination that he had been previously convicted in federal court for violation of federal liquor laws, that he met the anonymous caller at the filling station and agreed to purchase the 50 gallons about which the caller had spoken, and that he purposely arrived late to pick up the whiskey because if there was a "set up," the federal agents would probably have departed. He indicated no hesitation in accepting the offer to purchase. To the contrary, he agreed to meet a complete stranger to strike up a bargain on the sale of whiskey. He went out to Law Road after having all day to consider whether he really wanted to consummate the sale, and he was so eager to purchase the whiskey that he went through with it even though he did not like both the

fact that the sale was to take place on Law Road and the fact that he allegedly recognized agent Hopkins near the rendezvous point. On cross-examination, he testified that he does not like to arrive on time to these meetings because he fears "set-ups"; that agent Hopkins had arrested him many times; and that he intended to sell the whiskey he purchased from the stranger. In addition, one of the women arrested with appellant on the night of May 22 testified that she had heard that appellant was "a whiskey man"; several agents also testified to this effect; and there was evidence that appellant had had two recent convictions for violation of a local liquor ordinance.

Thus, although in the ordinary case the testimony of the informer would have been material to presentation of the entrapment defense, we do not believe that the informer's testimony in this case could have created in the minds of the jurors a reasonable doubt whether appellant was predisposed to commit the offense. On balance we believe that the record does not indicate that the informer's testimony would have been relevant and helpful to the defense. Accordingly, the District Court's refusal to order disclosure was not erroneous.

▇▇▇ With respect to appellant's contentions about the court's charge to the jury, we do not believe that the court committed reversible error in refusing appellant's special instructions or that the charge when taken as a whole erroneously described the respective burdens in the case.[1] We believe that the

---

1. That portion of the charge concerning entrapment is as follows:

Now, if you ladies and gentlemen entertain a reasonable doubt about any of the contentions of either or both of the defendants or if you entertain a reasonable doubt about the contentions of the government, or if you feel that the government has not proven the charges made against the defendants beyond a reasonable doubt, in any of those instances, you should return a verdict of not guilty as to any defendant about who you entertain a reasonable doubt.

Now, the Defendant Eddings asserts that he was the victim of entrapment as to the crime charged in the indictment.

Where a person has no previous intent or purpose to violate the law, but is induced or persuaded by law enforcement officers, or their agents, to commit a crime, he may be a victim of entrapment, and the law, if that were the case, as a matter of policy, would not permit a conviction in such a case if and when a jury would find that entrapment does exist as to a particular defendant.

On the other hand, where a person already has the readiness and willingness to break the law, the mere fact that a government agent provided what appears to be a favorable opportunity, is not entrapment.

For example, when the government suspects that a person is engaged in illicit sale of narcotics, it is not entrapment for a government agent to pretend to be someone else and to have information either directly or through an informer, or other person, to purchase narcotics from a suspect.

If the jury should find beyond a reasonable doubt, from the evidence in this case, that before anything at all occurred respecting the alleged offense of violating the liquor law, as is involved in this case, that Eddings was ready and willing to commit a crime such as charged in this indictment, whenever the opportunity was afforded, or that he had the disposition to commit such a crime, and that the government officers or their agents did no more than offer the opportunity to catch him in the act of the crime, then the jury should find that the defendant is not a victim of entrapment.

If the evidence in this case should leave you with a reasonable doubt as to whether the defendant had the previous intent or purpose or predisposition to commit a liquor law violation of the character charged, and did so only because he was induced, or persuaded, or corroborated [sic] by some officer or agent of the government, then in that event you would acquit the defendant.

Now, the function of the law enforcement is the prevention of crime. In apprehension of criminals, criminal activity is such that requires undercover work, use of informers, whether paid or unpaid, and strategy are [sic] necessary weapons in the arsenal of the police officers, particularly in illegal liquor and narcotic cases, because of their very nature. However, a policeman may not originate a criminal design. An official of the government may not implant in the mind of an otherwise innocent person the disposition to commit an offense and to induce its commission in order that they may prosecute. However, the fact that

charge did adequately inform the jury that the Government had the ultimate burden of proving beyond a reasonable doubt that appellant was not entrapped, although it would have been preferable for the court to have been explicit on this point in accord with appellant's first special request. *See* Martinez v. United States, 373 F.2d 810, 812 (10th Cir. 1967); Notaro v. United States, 363 F.2d 169, 174–175 (9th Cir. 1966). Defendant was also entitled to an instruction that the jury could acquit him on the basis of circumstantial evidence, although again on the facts of this case, we do not consider it reversible error for the court to have refused appellant's special request on this point.

The judgment is affirmed.

government agents merely afford opportunities or facilities for the commission of an offense does not in and of itself constitute entrapment. Entrapment occurs only when the criminal conduct was the product of creative activity, procurement, corruption and inducement on the part of law enforcement official; thus, the claimed defense of entrapment brings about the alleging of the conduct of the government agent. At the same time, one claiming entrapment will be subject to an appropriate inquiry into his own conduct and predisposition. Therefore, the reputation, past criminal activities, if any, and the conduct of, and attributable to the Defendant Eddings, pertaining to his criminal defense, intention or disposition, is a relevant consideration for the jury to determine in connection with this claim of entrapment by the defendant, Eddings, in this case; all to the end of your determining whether or not the government has carried its burden of proof to establish every essential element of the charge of possession and transportation of illegal whiskey, including the showing that it has not corruptly implanted in the mind of the Defendant Eddings a predisposition to commit this alleged offense and to induce and persuade him improperly to do the things with which he is charged.