UNITED STATES of America, Plaintiff-Appellee,

v.

Peter McMANUS, Defendant-Appellant.

No. 76–1875.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 10, 1977.

Decided Aug. 16, 1977.

Rehearing Denied Oct. 17, Nov. 7, 1977.

Kurt A. Philipps, Jr., Covington, Ky. (Court-appointed CJA), for defendant-appellant.

Philip Van Dam, U. S. Atty., Frederick S. Van Tiem, Harold Z. Gurewitz, Asst. U. S. Attys., Detroit, Mich., for plaintiff-appellee.

Before WEICK, PECK and ENGEL, Circuit Judges.

PECK, Circuit Judge.

This defendant appeals from his jury conviction for possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). A jury found defendant not guilty of aiding and abetting in the sale or distribution of heroin.

This case concerned a drug transaction and defendant-appellant's arrest in connection therewith on July 11, 1974. The Government's evidence tended to show the following. On July 10, 1974, Drug Enforcement Administration Agent Clifford Best received a telephone call from a fellow officer advising him of the availability of information on drug traffic in Battle Creek, Michigan. Best was put in contact with an informant who was willing to introduce undercover officer Wilbert Hyman to one Robert Rudolph, who was purportedly the "biggest drug dealer in Battle Creek." Hyman, Best, the informant and several other DEA agents went to Battle Creek. Upon their arrival in that city, Hyman and the informant checked into one room at a Travel Lodge Motel and Agent Best and the others checked into a second room. A meeting was arranged with Rudolph, and at approximately 11:45 p. m. on July 10, he met with Hyman and the informer at the motel. Rudolph attempted to contact his supplier in Kalamazoo in order to obtain the six ounces of heroin which Hyman offered to purchase, but was told he could not have the heroin until 7 p. m., on July 11. Rudolph then indicated he would contact a Detroit supplier known as "Harry the Dago."

At approximately 12 noon on July 11, all parties drove to Detroit. Hyman, Rudolph, the informant, and a female, who was to serve as the "bag lady," occupied a Mark IV (a government car). Best and the other agents, who had been in contact with Hyman at the Battle Creek motels, followed the Mark IV to Detroit. On route Rudolph told Hyman that "Harry the Dago" was violent and a very cautious businessman who should not be double-crossed.

After arriving in Detroit, Rudloph made a phone call and then advised Hyman that Harry wanted to meet them near a White Castle at Fenkell and Southfield Streets. The Mark IV, with Agent Best following, proceeded to the White Castle. Soon after their arrival, a black Cadillac driven by defendant-appellant entered the parking lot and parked approximately four feet away. Rudolph indicated to Officer Hyman that the driver of the Cadillac was "Harry the Dago." Rudolph then got out of the Mark IV and entered the Cadillac, which drove away but returned fifteen minutes later. Rudolph returned to the Mark IV and told Hyman that Harry would sell him five ounces of heroin at $1,000.00 per ounce, all money to be paid in advance. Hyman told Rudolph he would give Harry a portion of the money for a portion of the drugs. Hyman removed a bag containing money from the trunk of the car and gave $3,000 to Rudolph, who returned to the Cadillac, which again drove away. Approximately 45 minutes later a green station wagon entered the White Castle parking lot and circled in front of the Mark IV. Defendant-appellant was driving and Rudolph was in the passenger seat, and as they passed approximately seven feet in front of the Mark IV, officer Hyman observed appellant pass a folded newspaper to Rudolph. Rudolph subsequently returned to the Mark IV and handed the folded newspaper to Hyman. Hyman opened the paper and found two large envelopes with twelve smaller coin envelopes inside, each containing heroin. Rudolph then told Hyman that Harry had the balance of the heroin and they were to follow him.

The station wagon left the parking lot followed by the Mark IV and the other agents. Shortly thereafter the station wagon pulled over to the curb, officer Hyman parked the Mark IV behind it, and then he gave the prearranged "bust sign" and the other officers and agents converged, arresting appellant, Rudolph, Hyman, the informant and the woman passenger. Two hundred dollars was found on Rudolph, but the balance of the purchase money was not recovered. 13.8 grams of heroin were found on Rudolph, and while drugs were not found on appellant's person, a packet containing approximately 63 grams of heroin was found between the seat cushions of appellant's car. Rudolph was also found, as the result of a later inventory search, to have a business card in his wallet upon which there was written the name "Harry" and a telephone number corresponding to that of appellant's residence telephone.

Prior to trial, appellant filed a motion to suppress the 63 grams of heroin, which was denied. Meanwhile, Rudolph died and thus the government's case at trial was largely presented through the testimony of officer Hyman, who recounted the statements of Rudolph. (The "bag lady" did not testify.) His testimony was admitted as statements of a co-conspirator under Federal Rules of Evidence, Rule 801(d)(2)(E).[1] During the trial, the defense sought to require the government to divulge the identity of the informer involved. The trial judge took evidence in an *in camera* proceeding, and concluded that the informer's testimony would be cumulative, that it would be of no value to the defense, and therefore he denied the defense motion.

■ Appellant contends that this court should find that the coconspirator exception to the hearsay rule violates a defendant's Right to Confrontation as guaranteed by the Sixth Amendment and set out by the Supreme Court in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). We have previously considered this precise issue, which *Bruton* specifically reserved. 391 U.S. at 128, n. 3, 88 S.Ct. 1620. We held:

"... [W]e are of the opinion that *Bruton* is not controlling under the circumstances existing here. ... We hold ... that the extra-judicial statements challenged by appellant were properly admitted into evidence since the statements fell squarely within the confines of the narrow co-conspirator exception to the [hearsay] rule." *Campbell v. United States,* 415 F.2d 356, 356–57 (6th Cir. 1969).

■ Appellant further contends, however, that the government failed to establish a conspiracy by non-hearsay evidence sufficient to allow the admission of Rudolph's statements. We agree that a *prima facie* case of conspiracy and defendant's connection thereto must be established by evidence independent of the admissions of a co-conspirator. "However, a *prima facie* case is less than proof beyond a reasonable doubt; indeed, it is less than a preponderance." *United States v. Mayes,* 512 F.2d 637, 651 (6th Cir.), *cert. denied,* 422 U.S. 1008, 95 S.Ct. 2629, 45 L.Ed.2d 670 (1975). We conclude that the facts established by the government at trial, including: defendant's presence and return to the scene where drugs were exchanged; defendant's passing of the newspaper to Rudolph, which newspaper was subsequently found to contain heroin; the presence of heroin in defendant's car, and the finding of the business card in Rudolph's possession with defendant's name and phone number on it, were sufficient to establish a *prima facie* case of conspiracy between defendant and Rudolph. It follows that the district court properly admitted statements of Rudolph made "during the course and in furtherance of the conspiracy."

■ Appellant also challenges the propriety of the district court's ruling denying his motion to suppress the heroin found in his car. He argues that Agent Best, who directed the arrests and search, did not possess probable cause to do so. However, probable cause can rest upon the collective knowledge of the police, rather than solely on that of the officer who actually makes the arrest. *United States v. Nieto,* 510 F.2d 1118, 1120 (5th Cir.), *cert. denied,* 423 U.S. 854, 96 S.Ct. 101, 46 L.Ed.2d 78 (1975); *United States v. Canieso,* 470 F.2d 1224, 1230 n. 7 (2d Cir. 1972); *United States v. Pitt,* 382 F.2d 322, 324 (4th Cir. 1967). The knowledge or information of the arresting officer at the time of arrest is relevant only where an arrest is predicated on that officer's personal observations and information concerning the criminal act. The correct test is whether a warrant if sought *could have* been obtained

---

1. Rule 801. DEFINITIONS

* * * * * *

(d) Statements which are not hearsay. A statement is not hearsay if—

* * * * * *

(2) Admission by party-opponent. The statement is offered against a party and is ... (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

by law enforcement agency application which disclosed its corporate information, not whether any one particular officer could have obtained it on what information he individually possessed. *Smith v. United States*, 123 U.S.App.D.C. 202, 204, 358 F.2d 833, 835 (1966), *cert. denied*, 386 U.S. 1008, 87 S.Ct. 1350, 18 L.Ed.2d 448. The collective knowledge of officer Hyman and the other federal and local officers involved in the arrest was sufficient "to warrant . . . prudent [men] in believing that the [appellant] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964), citing *Brinegar v. United States*, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). The search of defendant's car and the resulting seizure of the heroin was proper under the automobile exception to the warrant requirement of the Fourth Amendment. *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); see also, *United States v. Upthegrove*, 504 F.2d 682 (6th Cir. 1974).

The district court's refusal to require the government to divulge the identity of the informer is also challenged by appellant. The government's privilege to withhold the identity of an informant is qualified by "balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." *Roviaro v. United States*, 353 U.S. 53, 62, 77 S.Ct. 623, 628–629, 1 L.Ed.2d 639 (1957). Of course, an "[informer's] identity cannot be concealed from the defendant when it is critical to his case," *Branzburg v. Hayes*, 408 U.S. 665, 698, 92 S.Ct. 2646, 2665, 33 L.Ed.2d 626 (1972); *United States v. Eddings*, 478 F.2d 67, 70 (6th Cir. 1973), and "[w]hen the evidence suggests . . . that it is reasonably probable that the informer can give relevant testimony, the burden should be on the Government to overcome this inference with evidence that the informer cannot supply information material to the defense." 478 F.2d at 71. In this case, the district court required the government to come forward with proof, in an *in camera* proceeding, that the informer's testimony would not be helpful to the defense. After reviewing the evidence, the trial court so found. Moreover, this was not a situation in which the informer was a direct participant in the drug transaction. "The evidence upon which the appellant was convicted was secured by government agents personally and was in no way dependent on any informer." *United States v. Craig*, 477 F.2d 129, 131 (6th Cir. 1973).

Having determined the appellant's remaining contentions to be without merit, the judgment of the district court is affirmed.