921 F.2d 276
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Allan A. BERGHOLZ, Petitioner-Appellant,
v.
N.W. McMACKIN, Respondent-Appellee.
 No. 89-3740.
 United States Court of Appeals, Sixth Circuit.
 Dec. 27, 1990.
 
 Before WELLFORD and SUHRHEINRICH, Circuit Judges, and HOLSCHUH*, District Judge.
 PER CURIAM.
 
 
 1
 Appellant Allan A. Bergholz appeals from the district court's denial of his petition for writ of habeas corpus. Finding no merit to any of Bergholz's arguments on appeal, we affirm.
 
 I.
 
 2
 On or about February 21, 1982 Lisa Combs was murdered. Her body was found approximately eighteen days later in a wooded area in rural Geauga County, Ohio. An investigation by the Cleveland Police Department and the Bainbridge Police Department proceeded without success for more than one year. Then, on June 29, 1983, the Bainbridge Police Department received information implicating appellant in the murder of Lisa Combs. Specifically, an individual who asked that his name be kept anonymous told police that he had heard from a female friend that another female, named Diane Neal, had told her that her (Neal's) boyfriend had been involved in the murder. The police subsequently contacted Neal, who identified appellant as her boyfriend. Appellant was at that time serving a term of imprisonment in the Ohio State Reformatory at Mansfield, Ohio, for an unrelated felonious assault conviction.
 
 
 3
 On July 14, 1983, appellant was interviewed at the reformatory by three officers from the Cleveland and Bainbridge Police Departments. After being advised of his Miranda rights, appellant made an oral statement and then gave a written statement. Appellant stated that he was present at Combs' murder and that he witnessed several men take Combs to an alley where they beat and raped her. He identified the men, but he denied that he himself was involved in the murder, and he agreed to cooperate in the officers' investigation. However, appellant later amended the statement and claimed that in fact he was not present at the murder, but that he had been told about it by one of the participants. Appellant agreed to be transferred to Cuyahoga County for the purpose of further identifying the individuals he alleged were involved.
 
 
 4
 Shortly thereafter appellant was transferred from the state reformatory to the Cuyahoga County jail for further investigation in the Combs case. Appellant was transferred pursuant to an order of Cuyahoga County Court of Common Pleas Judge Terrence O'Donnell, the judge who had sentenced appellant on the earlier felonious assault conviction. On July 23, 1983, after being advised of his rights, appellant agreed to take a polygraph test, and he gave a statement similar to the first statement he had given on July 14--that he was present at and witnessed the Combs murder but did not participate. After failing the polygraph test, however, appellant admitted that he participated in the murder but only because the others present had forced him to do so, and appellant wrote out a longhand statement to this effect. Appellant again identified the other individuals he alleged were involved, and during the following week several individuals were brought to appellant, three of whom he implicated.
 
 
 5
 After investigating the information given by appellant, the police determined that the individuals identified by appellant were not involved. On August 18, 1983, the police again interviewed appellant at the county jail where, after orally advising appellant of his rights, they confronted him with the results of their investigation. Appellant admitted his sole responsibility for the murder, and after executing a written waiver of his Miranda rights appellant wrote out a longhand statement.
 
 
 6
 The next day, again after being advised of his Miranda rights, appellant gave an oral statement in which he described the circumstances surrounding the murder, and he drew a map including the locations involved. Appellant executed another waiver form and then gave a detailed typewritten statement. He subsequently agreed to and did accompany the officers to the locations described in the statement and indicated on the map. Shortly thereafter appellant claimed he had information indicating his innocence and produced a letter from Diane Neal, several lines of which had been partially erased and overwritten in pencil. The penciled portion, later determined to have been written by appellant, identified a person named Boone as the principal assailant.
 
 
 7
 Appellant was indicted on October 18, 1983. Prior to trial appellant moved to suppress the various oral and written statements he had given. He also moved for an order compelling the state to disclose the identity of the informant who first implicated appellant in the Combs murder. Following a series of hearings the trial court concluded that appellant's statements were voluntarily made and were not taken in violation of any constitutional rights. The court also determined that the state need not disclose the identity of the informant. Appellant was tried and convicted of one count of aggravated murder and one count of felonious sexual penetration. He was sentenced to life in prison for the aggravated murder conviction and to a consecutive term of seven to twenty-five years for the felonious sexual penetration conviction. These convictions were affirmed on appeal, and the Ohio Supreme Court declined review.
 
 
 8
 On May 29, 1987 appellant filed a petition for writ of habeas corpus in the United States District Court for the Northern District of Ohio. Appellant set forth the same arguments that had been presented to and rejected by the state court of appeals: that his statements should have been suppressed because they were taken in violation of his Fourth, Fifth, Sixth and Fourteenth Amendment rights; that he was denied due process by the state's failure to disclose the identity of its informant; and that the evidence presented at the trial was insufficient to establish the essential elements of the alleged offenses beyond a reasonable doubt. The magistrate issued a report and recommendation on July 14, 1988, recommending that the petition for writ of habeas corpus be denied. On August 3, 1989 the district court adopted the magistrate's recommendation and denied the petition. Appellant filed a timely notice of appeal, and the matter is now before this Court for review.
 
 II.
 
 9
 Federal courts will entertain a habeas corpus petition on behalf of a person in custody pursuant to a state court judgment if the custody violates the Constitution, laws or treaties of the United States. 28 U.S.C. Sec. 2254(a). We review the district court's judgment on a habeas corpus petition de novo but defer to evidence-supported state court findings of fact. Lundy v. Campbell, 888 F.2d 467, 469 (6th Cir.1989), cert. denied, 110 S.Ct. 2212 (1990). Moreover, we review the district court's factual findings in a habeas corpus proceeding for clear error. McCall v. Dutton, 863 F.2d 454, 459 (6th Cir.1988), cert. denied, 109 S.Ct. 1744 (1989); Ray v. Rose, 535 F.2d 966, 973 n. 9 (6th Cir.), cert. denied, 429 U.S. 1026 (1976).
 
 
 10
 Appellant's brief sets forth five issues for review. For the reasons stated below, we find each of appellant's arguments to be without merit.
 
 A.
 
 11
 In his first proposition of law appellant states:
 
 
 12
 Statements obtained during a custodial interrogation following an illegal seizure of the defendant violate the Fourth and Fourteenth Amendments of the U.S. Constitution and must be suppressed.
 
 
 13
 Appellant's position is that when he was transported from the state reformatory at Mansfield to the Cuyahoga County jail for further investigation he was "seized" within the meaning of the Fourth Amendment. Appellant argues that this seizure was unconstitutional because the police "did not have probable cause to obtain a warrant or to have [appellant] charged." He further argues that the transfer order of Judge O'Donnell was illegal because Judge O'Donnell lacked jurisdiction to enter such an order.
 
 
 14
 We find that appellant's Fourth Amendment claim is foreclosed by Stone v. Powell, 428 U.S. 465 (1976), in which the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced in his trial." Id. at 494 (footnotes omitted). Here there can be no dispute that appellant had a full and fair opportunity to litigate his Fourth Amendment claim in the state courts. "For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which to raise the claim and the presentation of the claim in this case must not have been frustrated by a failure of that mechanism." Gilbert v. Parke, 763 F.2d 821, 823 (6th Cir.1985). See Riley v. Gray, 674 F.2d 522, 526 (6th Cir.), cert. denied sub nom. Shoemaker v. Riley, 459 U.S. 948 (1982). The trial court in this case conducted a four-day hearing on appellant's Fourth Amendment claim, and other issues, during which approximately twenty witnesses testified. Appellant also raised the Fourth Amendment issue on direct appeal and it was fully considered by the state appellate court.
 
 
 15
 Appellant argues that he did not receive a full hearing on this claim in the state courts because the state courts used a constitutionally impermissible standard in deciding the issue. According to appellant, the state courts employed a standard which too narrowly defined "seizure" when they determined that appellant's transfer from the state reformatory to the Cuyahoga County jail was not a "seizure" for purposes of the Fourth Amendment. The district court below appears to have considered the merits of this argument, although not required to do so under Stone v. Powell, when it stated, in agreement with the state appellate court, that the transfer of appellant "did not constitute a 'seizure' within the scope of the Fourth Amendment." However, even if the state courts were in error in applying substantive law regarding "seizures" under the Fourth Amendment, the state courts did not refuse to follow applicable precedent, because there is no authority for the proposition advanced by appellant. A federal court in a habeas proceeding should not second guess the state court if a full and fair opportunity to present a Fourth Amendment claim is provided to the habeas petitioner. Gilbert v. Parke, 763 F.2d at 824. Appellant had a full opportunity to present his claim in the state trial court and the state appellate court, and appellant failed to provide those courts with any authority, nor has he cited any authority in this habeas proceeding, for the proposition that the transfer of an incarcerated inmate from one place of confinement to another constitutes a "seizure" under the Fourth Amendment.
 
 
 16
 Appellant also attempts to avoid the limitations imposed by Stone v. Powell by analogizing this case to Kimmelman v. Morrison, 477 U.S. 365 (1986). The issue in Kimmelman was whether the federal habeas petitioner had been denied the effective assistance of counsel at trial in violation of the Sixth Amendment. The alleged error of trial counsel was his failure to timely raise a potentially meritorious Fourth Amendment claim. Since the burden was on the habeas petitioner to establish that his trial counsel's failure was prejudicial, see Strickland v. Washington, 466 U.S. 668, 692 (1984), the Court in Kimmelman held that the federal habeas court must inquire into the merits of the unasserted Fourth Amendment claim notwithstanding Stone v. Powell. Appellant herein cites Kimmelman for the proposition that his Fourth Amendment claim is not foreclosed by Stone v. Powell, because this claim is "inextricably interwoven" with his Fifth Amendment claim. However, Kimmelman cannot be read so broadly, as appellant suggests, to mean that a Fourth Amendment issue fully litigated in state courts can be raised and relitigated in a federal habeas proceeding whenever there are other related constitutional violations alleged. In Kimmelman it was necessary to consider the merits of the unasserted Fourth Amendment claim in order to resolve the petitioner's Sixth Amendment claim. In the present case the Fourth Amendment claim was fully litigated in the state court, and the mere fact that petitioner also asserts additional constitutional violations arising from the alleged seizure does not remove this case from the mandates of Stone v. Powell.
 
 
 17
 For these reasons, we conclude that the state provided appellant with an opportunity for full and fair litigation of his Fourth Amendment claim, and therefore relitigation of this claim in a federal habeas proceeding is barred by Stone v. Powell. However, we also note that even if appellant's claim was not foreclosed by Stone v. Powell, and even if the transfer of an inmate from one facility to another could be considered a "seizure" under the Fourth Amendment, the record shows that appellant consented to the transfer. Accordingly, were we to consider appellant's claim in this habeas proceeding, we would be compelled to conclude that it is without merit.
 
 B.
 
 18
 In his second proposition of law appellant states:
 
 
 19
 Statements obtained during an extended custodial interrogation of a mentally retarded defendant, with a psychiatric personality disorder by police teams which operated in shifts and used psychological techniques to evoke destabilizing emotions while the defendant was isolated from friends and family and was unrepresented by counsel are involuntary and violate the Fifth and Fourteenth Amendments of the U.S. Constitution and must be suppressed.
 
 
 20
 Appellant's claim here is that his various statements should have been suppressed because they were not voluntary within the meaning of the Fifth Amendment. In support of this claim appellant relies principally on the testimony indicating that he has a low IQ and that he suffers from a "borderline personality disorder." Appellant also contends that the police officers subjected him to psychological coercion when questioning him. Appellee responds that under the totality of the circumstances appellant's various statements were clearly voluntary.
 
 
 21
 Although the ultimate determination whether a confession is voluntary is a legal question requiring independent examination in a federal habeas proceeding, on "subsidiary factual questions" the federal habeas court should give "great weight to the considered conclusions of a coequal state judiciary." Miller v. Fenton, 474 U.S. 104, 112 (1985). In Miller v. Fenton, the Court explained:
 
 
 22
 [S]ubsidiary questions, such as the length and circumstances of the interrogation, the defendant's prior experience with the legal process, and familiarity with the Miranda warnings, often require the resolution of conflicting testimony of police and defendant. The law is therefore clear that state-court findings on such matters are conclusive on the habeas court if fairly supported in the record and if the other circumstances enumerated in Sec. 2254(d) are inapplicable. But once such underlying factual issues have been resolved, and the moment comes for determining whether, under the totality of the circumstances, the confession was obtained in a manner consistent with the Constitution, the state-court judge is not in an appreciably better position than the federal habeas court to make that determination.
 
 
 23
 Id. at 117. See also McCall v. Dutton, 863 F.2d at 459 ("This court must presume that state court subsidiary findings of historical fact are correct").
 
 
 24
 Here the state appellate court did make several subsidiary factual determinations after reviewing the evidence concerning appellant's mental condition and the circumstances surrounding the questioning of appellant:
 
 
 25
 In the instant action, appellant was thirty years old at the time the challenged statements were made by him. In addition, appellant completed eleven years of school and tested at 71 on the Weschler Adult Intelligence Scale, placing him in the low borderline area. However, as testified by Dr. Philip J. Resnick, M.D., the Director of the Court Psychiatric Clinic in Cuyahoga County, appellant was capable of functioning in society with a fair amount of social skills and that appellant was a more "street-wise" individual than his intellectual I.Q. indicated. Furthermore, Dr. Resnick testified with a reasonable degree of medical certainty that, in his opinion, all of appellant's statements were voluntarily made and that appellant knowingly and intelligently waived his right against self-incrimination. Finally, the record discloses that appellant had a somewhat lengthy criminal record, stemming from previous convictions of gross sexual imposition, felonious assault, endangering children, and numerous traffic offenses.
 
 
 26
 With respect to the interrogation of appellant, the record does not disclose that appellant was subjected to extensive and/or lengthy periods of questioning. Rather, during the two month stay in the Cuyahoga County Jail, appellant was questioned on few occasions and such questioning did not occur at regular or repeated intervals. Nor do we find that appellant was physically or psychologically mistreated. On the contrary, appellant's requests for tangible items, i.e. cigarettes and food, were always met by the police officers.
 
 
 27
 Based on the foregoing evidence, we conclude that the State met its burden of proving the voluntariness of the challenged statements by a preponderance of the evidence.
 
 
 28
 We agree with the conclusion reached by the district court below that, under the totality of the circumstances, appellant's statements were voluntary. First, there was no evidence of any overt threats or coercion by the officers who questioned appellant.[1] Rather, the record shows that appellant was not subjected to extensive periods of questioning, nor was he questioned at repeated intervals. Also, appellant was not physically or psychologically mistreated and his requests for various items were always met by the police officers who had contact with appellant. These are the findings made by the state court, and we believe that these findings are fairly supported in the record.
 
 
 29
 Appellant's argument rests on the allegation of more subtle "psychological" pressures placed upon him, i.e., that the officers preyed upon his low intelligence and borderline personality disorder. However, in Colorado v. Connelly, 479 U.S. 157 (1986), the Supreme Court held that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." Id. at 167. The Court rejected the argument that "a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional 'voluntariness.' " Id. at 164. See also McCall v. Dutton, 863 F.2d at 460 (noting that "proof of police coercion is a threshold requirement"). Here there is simply no evidence to suggest that appellant's various statements were extorted from him by means of any coercive activity. Additionally, the record fairly supports the state court findings that appellant "was capable of functioning in society with a fair amount of social skills and ... was a more 'street-wise' individual than his intellectual I.Q. indicated." Accordingly, in view of the lack of evidence of police coercion, and since the techniques used by the police in the interrogation were not shown to be unusual or to be sufficient to overbear appellant's will, we conclude that appellant's statements were voluntarily made.
 
 C.
 
 30
 Appellant's third proposition of law, presenting his final argument regarding the suppression of his various statements, states:
 
 
 31
 Statements obtained during the course of an extended custodial interrogation which followed the initiation of legal proceedings against the defendant violated the defendant's Sixth and Fourteenth Amendment rights to counsel where the defendant was never brought before a magistrate to be advised of his right to counsel.
 
 
 32
 Appellant argues that when he was "seized," i.e., transferred from the state reformatory to the county jail, he had the right to the appointment of counsel and to confer with counsel prior to questioning. The state argues that appellant's Sixth Amendment right to counsel had not attached at the time of questioning because no formal criminal proceedings had been instituted against him. This issue was not addressed by the district court below, although the magistrate did note, in connection with appellant's voluntariness argument, that appellant was given and waived his Miranda rights prior to each session of questioning.
 
 
 33
 We find the state's position to be well taken. "[U]ntil such time as the 'government has committed itself to prosecute, and ... the adverse positions of government and defendant are solidified,' the Sixth Amendment right to counsel does not attach." Moran v. Burbine, 475 U.S. 412, 432 (1986). See also Massiah v. United States, 377 U.S. 201, 205 (1964). Since all of the statements in question were made prior to when formal proceedings were initiated against appellant, the Sixth Amendment right to counsel had not attached at the time of those statements. Appellant's argument to the contrary is without merit.
 
 D.
 
 34
 Appellant's fourth proposition of law states:
 
 
 35
 The identity [of] a person who purports to have knowledge of an unsolved murder where no eye witness testimony or physical or scientific evidence exists to connect the defendant to the crime, is material to the preparation of defendant's defense and due process requires that absent a compelling public need for secrecy his identity must be disclosed, and a denial of disclosure violates Fourteenth Amendment rights.
 
 
 36
 Appellant argues that he was denied due process of law by the state's refusal to disclose the identity of the informant who provided the information that led the police to investigate appellant's potential involvement.[2] Appellee responds that the informant was a mere tipster providing only "triple hearsay," and that appellant failed to establish that disclosure of the informant's identity would have been relevant and helpful to the defense or essential to a fair trial. The district court below found no evidence that disclosure would have assisted appellant in his defense, because the informant appeared to have had no involvement in the homicide. The court also rejected appellant's argument under Brady v. Maryland, 373 U.S. 83 (1963), finding no evidence to suggest that the informant possessed exculpatory information which could aid appellant.
 
 
 37
 Under Roviaro v. United States, 353 U.S. 53 (1957), the question whether the informant's identity should be disclosed "calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." Id. at 62. The Court further elaborated: "Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Id. Cases applying the Roviaro balancing test have generally concluded that disclosure is required where it is "reasonably probable that the informer can give relevant testimony" material to the defense, United States v. McManus, 560 F.2d 747, 751 (6th Cir.1977), cert. denied, 434 U.S. 1047 (1978), or where the informant actively participated in the crime charged. See McLawhorn v. North Carolina, 484 F.2d 1, 5 (4th Cir.1973). However, the state need not disclose the identity of a "mere tipster," United States v. Sherman, 576 F.2d 292, 296 (10th Cir.), cert. denied sub nom. Cerase v. United States, 439 U.S. 913 (1978); United States v. Barnett, 418 F.2d 309, 311 (6th Cir.1969), or the identity of the informant where the informant played a passive or small role in the offense. United States v. Moreno, 588 F.2d 490, 494 (5th Cir.), cert. denied, 441 U.S. 936 (1979).
 
 
 38
 Here the undisclosed informant was a male who had been told by a female friend that another female (Diane Neal) said her (Neal's) boyfriend (appellant) was involved in the homicide. There is nothing in the record to suggest that this informant was anything but a "mere tipster" providing essentially third-hand information. Appellant merely speculates that the tipster may himself have been involved in the homicide. We find such speculation to be insufficient to require disclosure of the informant's identity under the Roviaro test. Furthermore, it is also speculation to suggest that the informant possessed exculpatory information material either to guilt or to punishment, and thus the court below was correct to reject appellant's Brady argument. Accordingly, assuming that appellant's Roviaro claim is cognizable in a federal habeas proceeding, see Simpson v. Kreiger, 565 F.2d 390, 391-92 (6th Cir.1977), cert. denied, 435 U.S. 946 (1978), we find that appellant's claim is without merit.
 
 E.
 
 39
 Appellant's fifth and final proposition of law states:
 
 
 40
 The reasonable doubt standard and due process under the Fourteenth Amendment requires that a defendant be acquitted where the jury is required to speculate as to the truth of various conflicting statements of the defendant and there is no independent evidence which corroborates the truth of any statement.
 
 
 41
 Appellant argues that the evidence presented at trial was insufficient as a matter of law to support his conviction, and that the jury was left to speculate on the question of defendant's guilt beyond a reasonable doubt. This argument must be considered under the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979): "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (emphasis in original). Here the jury was able to consider, and determine the credibility of, appellant's various statements. The jury also could compare those statements with the other evidence of the crime, including the autopsy findings of the victim's injuries and the clothing worn by the victim at the time of the offense. Additionally, there was evidence that appellant assisted in the preparation of a map of the various locations involved in the murder, and that he took the police to these locations. For these reasons, we conclude that there was sufficient evidence presented at trial to permit a rational juror to have found appellant guilty beyond a reasonable doubt.
 
 III.
 
 42
 For the foregoing reasons, we find each of appellant's arguments to be without merit. Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable John D. Holschuh, Chief District Judge for the Southern District of Ohio sitting by designation
 
 
 [1]
 Accordingly, this case is clearly distinguishable from the several cases cited by appellant for the proposition that "the totality of the circumstances of this interrogation overpowered his intellect and will." See, e.g., Darwin v. Connecticut, 391 U.S. 346 (1968); Sims v. Georgia, 389 U.S. 404 (1967); Davis v. North Carolina, 384 U.S. 737 (1966)
 
 
 [2]
 Appellant also refers in his brief to a written statement of Diane Neal, the contents of which the state allegedly failed to disclose. However, the disclosure of such a statement is an issue which appears not to have been raised and addressed in the state courts. Furthermore, there is no mention of this issue in appellant's federal habeas petition, and, consequently, the issue was not addressed by the district court below. Accordingly, this Court will not consider whether the state had a duty to disclose but failed to disclose a written statement of Diane Neal