**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Glenn LASUITA, Defendant-Appellant.**

**No. 83–1478.**

United States Court of Appeals, Sixth Circuit.

Argued Aug. 31, 1984.

Decided Jan. 18, 1985.

Rehearing Denied March 29, 1985.

James D. O'Connell, argued, Highland Park, Mich., for defendant-appellant.

Leonard R. Gilman, U.S. Atty., Brian Legghio, Asst. U.S. Atty., argued, Detroit, Mich., for plaintiff-appellee.

Before MERRITT, Circuit Judge, PHILLIPS, Senior Circuit Judge, and BERTELSMAN, District Judge.[*]

MERRITT, Circuit Judge.

The principal question presented on this appeal is whether the District Court properly answered a question of the jury on the law of entrapment. We conclude that the jury was misinformed and reverse for a new trial.

## I.

Lasuita paid $50,000 in cash for 1,000 pounds of marijuana to DEA agents posing as marijuana suppliers. Gerald Halecki, a confidential informant, testified that he met with Lasuita early in January, 1982 and told him that he, Halecki, and his partner, Dodson (a DEA undercover agent), had repossessed a truck in connection with their repossession business and discovered approximately 1,000 pounds of marijuana, which he was willing to sell. Lasuita inquired about the price and arrangements of sale. Halecki testified that Lasuita called Johnny May to determine if "he would bank roll the deal for him."[1] He testified that after this initial meeting Lasuita called the informant on a number of occasions and requested to meet the informant's partner to expedite the purchase of the marijuana. He stated that he and Lasuita drove to a nearby restaurant, where Halecki introduced Lasuita to Agent Dodson. During this meeting Lasuita discussed with Agent Dodson the terms and arrangements for purchasing the 1,000 pounds of marijuana. Halecki stated that Lasuita displayed knowledge of the marijuana trade. The meeting was recorded by means of a body recorder worn by Agent Dodson. Lasuita warned that he, Lasuita, would have

---

[*] The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1. Lasuita testified that he purchased the marijuana with $47,000 of his and his wife's money which he had been saving in a suitcase at his home, and that Johnny May furnished only $3,000.

weapons to ensure all went according to plan. Lasuita inspected the marijuana, which was loaded in a DEA undercover van, returned to the restaurant, then left the table to place a call to "his man." Upon returning, Lasuita stated that the deal was off because "his man has smelled a rat." Halecki testified that he drove Lasuita home from the meeting and Lasuita said he believed Agent Dodson "was a cop." In a recorded telephone conversation introduced at trial, Lasuita asked for Agent Dodson's driver's license number and Social Security number. In response, Agent Dodson requested similar information about Lasuita and "his man." Both parties refused to give the requested information. Afterwards Agent Dodson instructed informer Halecki to provide Dodson's undercover license number to Lasuita to overcome suspicions of Agent Dodson's identity.

Testimony was introduced by the prosecution that as a result of recorded telephone conversations between Lasuita, Johnny May and Agent Dodson, Lasuita and May agreed to purchase the marijuana on January 28, 1982. Later that day Agent Dodson and informant Halecki drove to Lasuita's house in the DEA undercover van, accompanied by several surveillance agents. Lasuita entered the van with a briefcase containing $50,000 in currency and paid that amount to the agents. Lasuita testified that "his man" wanted the marijuana delivered in one hundred pound bales. Agent Dodson recorded the conversation that took place in the van. Lasuita then was arrested. Johnny May was placed under arrest later the same day.

In their testimony, Lasuita and his wife presented a different version of events. They stated that they resisted the informant's offers and entreaties for several weeks, that the informant made numerous calls offering to sell the marijuana to Lasuita and kept on lowering the price until Lasuita finally agreed to make the purchase.

## II.

At the conclusion of the trial, the district judge instructed the jury on the defense of entrapment as follows:

In this case, members of the jury, the Defendant asserts that he was the victim of entrapment as to the offense charged in the Indictment. Where a person has no previous intent or purpose to violate the law, but is induced or persuaded by law enforcement officers or their agents to commit a crime, he is a victim of entrapment, and the law as a matter of policy forbids his conviction in such a case.

On the other hand, where a person already has the readiness and willingness to break the law, the mere fact that government agents provide what appears to be a favorable opportunity is not entrapment. For example, when the government suspects that a person is engaged in illicit sale of narcotics, it is not entrapment for a government agent to pretend to be someone else and to offer, either directly or through an informer or other decoy, to purchase narcotics from the suspected person.

If, then, the jury should find beyond a reasonable doubt from the evidence in the case that, before anything at all occurred respecting the alleged offense involved in this case, the Defendant was ready and willing to commit crimes such as are charged in the Indictment, whenever opportunity was afforded, and that government officers or their agents did no more than offer the opportunity, then the jury should find that the Defendant is not a victim of the entrapment.

On the other hand, if the evidence in the case should leave you with a reasonable doubt as to whether the Defendant had the previous intent or purpose to commit an offense of the character charged, apart from the inducement or persuasion of some officer or agent of the government, then it is your duty to find him not guilty. The burden of proof, of course, is on the Government to prove beyond a reasonable doubt that the Defendant was not entrapped.

The jury began deliberations at about noon on April 25, 1983, and returned at 4:30 P.M. with the following statement:

We are in a deadlock on the issue of entrapment and we request a clearer definition.

The District Judge re-read the original instruction, nearly verbatim, and supplemented it with a portion of the entrapment instruction adopted by the Seventh Circuit:

Now if the Defendant, and let me put it another way, if the Defendant had no prior intent or predisposition to commit the offense charged, and was induced or persuaded to do so by law enforcement officers or their agents, then he was entrapped. If, however, the Defendant had a prior intent or predisposition to commit the offense charged, then he was not entrapped, even though law enforcement officers or their agents provided a favorable opportunity to commit the offense, made committing the offense easier, or even participated in acts essential to the offense.

In determining whether the Defendant had a prior intent or a predisposition to commit the offense, you may consider the personal background of the Defendant as well as the nature and degree of any inducement or persuasion of the Defendant by law enforcement officers and their agents.

The question is: Did the Defendant have a prior intent or a predisposition to commit the offense, and the law enforcement agents just provided a favorable opportunity to commit it and made the commission easier, and even participated, or was the Defendant induced by law enforcement officers and their agents to commit the offense when he had no prior intent or disposition to do so? That is the decision you have to make. Of course, the law says the burden is on the Government to prove beyond a reasonable doubt that the Defendant was not entrapped.

The following morning, the jury posed a second question to the District Judge:

In order to be entrapped does: (1) No previous intent to commit the crime and (2) a readiness and willingness to commit the crime after given a favorable opportunity have to be satisfied[?]

The District Judge then further instructed the jury, using the first paragraph of the District of Columbia entrapment instruction:

Entrapment means that law enforcement officials, induced or persuaded, or acting through agents, of course, induced or persuaded an otherwise unwilling person to commit an unlawful act. Where a person is predisposed to commit an offense, that is where a person is ready and willing to violate the law, the fact that government officials or their agents merely afforded opportunity for him to do so does not constitute entrapment.

Later that same day, the jury returned with a third question for the court:

Does the Government have to prove, beyond a reasonable doubt, that *prior to contact* with the U.S. Government or its agents, that the Defendant was ready and/or willing to enter into an illegal act? (Emphasis added.)

The District Judge concluded that the question was capable only of a "yes" or "no" response, and, over defendant's objection, answered the question "No."

Later that day, the jury returned a verdict, finding defendant guilty of conspiracy to possess with intent to distribute marijuana and use of a communication facility to commit a felony.

### III.

Appellant contends that the District Court committed reversible error when it answered "No" to the jury's question as to whether the Government has to prove beyond a reasonable doubt that the defendant was ready or willing to enter into an illegal act "prior to his contact" with the Government agents.

 The defense of entrapment precludes conviction when there is no evidence

of defendant's predisposition to commit the crime and the criminal conduct was "the product of the creative activity of law enforcement officials.... To determine whether entrapment has been established, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal." *Sherman v. United States,* 356 U.S. 369, 372, 78 S.Ct. 819, 821, 2 L.Ed.2d 848 (emphasis supplied). *See also Sorrells v. United States,* 287 U.S. 435, 442, 53 S.Ct. 210, 212, 77 L.Ed. 413 (1932). The entrapment defense focuses on "the intent or predisposition of the defendant to commit the crime." *United States v. Russell,* 411 U.S. 423, 429, 93 S.Ct. 1637, 1641, 36 L.Ed.2d 366 (1973); *United States v. Ambrose,* 483 F.2d 742, 746 (6th Cir. 1973). Predisposition often is described as the defendant's "readiness and willingness" to commit the crime in question. *United States v. Eddings,* 478 F.2d 67, 72 n. 1 (6th Cir.1973).

By answering "No" to the jury's last question, the District Judge in effect told the jurors that the Government was not required to prove that the defendant was ready and willing to commit the crime *prior to* contact with the Government agents. The Court's response left open the question of whether the government must prove that defendant's predisposition existed *at the time of* contact with the Government agents or just before committing the offense.

We do not find any opinion of this Court addressing precisely the issue of the time at which predisposition must exist. Language of several of this Court's decisions indicate that the critical time for the existence of a defendant's predisposition is the time when the criminal opportunity is presented to the defendant. In *United States v. Jackson,* 539 F.2d 1087, 1090 (6th Cir.1976), the Court rejected defendant's contention that entrapment was established as a matter of law because "there was evidence ... from which it could reasonably be inferred that Leon Jackson *had a predisposition* to deal in narcotics *at the time of his first contact* with agent Smith." (Emphasis added.) The decision

in *United States v. Jones,* 575 F.2d 81 (6th Cir.1978), also suggests that the relevant time for the existence of a defendant's predisposition is when the criminal opportunity is offered. In that case, this Court found no error with an entrapment instruction that:

> the burden was on the government to prove beyond a reasonable doubt that the defendant was ready and willing to commit the crimes *whenever an opportunity was afforded him to do so* ... 575 F.2d at 84 (Emphasis added.)

In *United States v. Eddings, supra,* 478 F.2d at 72 n. 1, this Court approved entrapment instructions which stated, in part:

> If the jury should find beyond a reasonable doubt, from the evidence in this case, that before anything at all occurred respecting the alleged offense of violating the liquor law as is involved in this case, that Eddings was ready and willing to commit a crime such as charged in this indictment, *whenever the opportunity was afforded,* or that he had the disposition to commit such a crime, and that the government officers or their agents did no more than offer the opportunity to catch him in the act of the crime, then the jury should find that the defendant is not a victim of entrapment. (Emphasis added.)

Under these entrapment cases, it appears that the prosecution must show that the defendant was willing to commit the offense at the time when the government agents initially contacted the defendant to propose the wrongful conduct. The agents may not take a defendant who is initially truly unwilling to commit the offense and then induce him to become a criminal.

Although on the merits the facts concerning the issue of entrapment in the instant case are much stronger for the government than for the defense, a jury might find entrapment if it fully accepts the testimony of the defendant and his wife. They both testified that the defendant told the government informant that the defendant was uninterested. They testi-

fied that the defendant resisted for several weeks. This testimony makes a jury issue, and the jury was obviously worried about entrapment.

The time when the predisposition must exist is not usually an important issue in entrapment cases because the time of contact is usually simultaneous with, or very close to, the time the crime is committed. In the present case, however, there was a lapse of time of three weeks in between the contact and the commission. The jury was obviously confused by the question of when the defendant must have the requisite predisposition.

The jury seems to have been confused about whether the predisposition must exist only at the "time of the offense" or at the "time of contact." They do not seem to have been concerned about whether the requisite predisposition must be shown to have existed at some remote "prior time." By using the phrase "prior to contact" in their question, the jury seems to have intended "immediately prior to contact," or "at the time of contact."

█ Since the District Court's answer to the jury's question leaves the jury with the impression that it makes no difference that the defendant had no criminal predisposition at the time of contact, it seems likely that the jury was misled by the District Court's one word answer to the question. The District Court should have advised the jury that the predisposition has to exist at the time of the initial contact. In light of the jury's apparent confusion on a key question in this entrapment case, we must reverse and remand the case for a new trial.

## IV.

█ We further conclude that the District Court did not abuse its discretion by permitting the DEA agent to testify as the first witness for the prosecution concerning "reverse-buy" investigative techniques after defendant had raised the defense of entrapment because the Government's testimony was responsive to the defendant's defense of entrapment announced by his attorney in his opening statement to the jury. The admission of this testimony was within the discretion of the District Judge, and was not an abuse of discretion. Rule 402, Federal Rules of Evidence; *United States v. Brady*, 595 F.2d 359, 361 (6th Cir.), *cert. denied*, 444 U.S. 862, 100 S.Ct. 129, 62 L.Ed.2d 84 (1979).

REVERSED.