**UNITED STATES of America, Plaintiff–Appellant,**

v.

**James Edgar FLEENER, Defendant–Appellee.**

**No. 89–5474.**

United States Court of Appeals, Sixth Circuit.

Argued Nov. 17, 1989.

Decided April 9, 1990.

Rehearing Denied May 9, 1990.

Joseph M. Whittle, U.S. Atty., Terry Cushing (argued), Louisville, Ky., plaintiff-appellant.

Robert E. Fleming (argued), Louisville, Ky., for defendant-appellee.

Before WELLFORD and NELSON, Circuit Judges, and SUHRHEINRICH, District Judge.[*]

---

[*] Honorable Richard F. Suhrheinrich, United States District Court for the Eastern District of Michigan, sitting by designation.

[1.] The Federal Sentencing Guidelines were promulgated pursuant to the Sentencing Re-

SUHRHEINRICH, District Judge.

Appellant United States appeals the sentence of appellee James Edgar Fleener ("Fleener") claiming that the district court incorrectly applied the Federal Sentencing Guidelines [1] ("the Guidelines") in reducing Fleener's offense level for acceptance of responsibility. We affirm.

## I.

In May of 1988, as part of an effort to identify persons involved in the sexual exploitation of children, particularly individuals in the military, Special Agent Pamela Dickenson ("Dickenson") of the Naval Investigative Service ("NIS") in San Diego, California, placed the following ad in "Odyssey," a nationally distributed "swingers" magazine.

> Nationwide: w/f 34, seeks those who enjoy the more unusual in life. Prefer military. A uniform does something for me. CG POB 2144, Phoenix AZ 85036

Appellee answered the ad on May 26, 1988, indicating his interest in bestiality and inviting "CG" (Dickenson's undercover identity) to write back to him at Post Office Box No. 1361, Louisville, Kentucky 40201. Dickenson responded to Fleener's May 26, 1988 letter on June 13, 1988, stating that bestiality was one of her two great interests, the other being "youth."

In a series of correspondences between Fleener and Agent Dickenson, defendant repeatedly expressed his interest in bestiality and child pornography. Dickenson indicated to Fleener that she had the type of tapes Fleener was interested in, but she did not offer to sell or trade those tapes. Fleener wrote back, stating that he had a tape which contained a scene of a 12 year old girl engaging in bestiality, and offered to send Dickenson a copy in exchange for her tape.

In January of 1988, Fleener had ordered a videotape from Anthony Enterprises, located in California. The flyer from which

form Act of 1984, as amended 18 U.S.C. § 3551 *et seq.* (1982 and Supp. IV) and 28 U.S.C. § 991–98 (1982 ed. Supp. IV).

Fleener ordered the tape stated that the tape portrayed various sexual acts performed by women, including sexual acts between women and animals. The flyer did not mention that any minors were involved in the tape. Fleener testified that at the time he ordered the tape he did not know that it contained child pornography.

Sometime in July of 1988, while he was corresponding with Dickenson, Fleener went through his tapes and "tried to pick the segment out that portrayed the youngest looking person I had in there." Fleener copied a portion of the tape he had received from Anthony Enterprises and forwarded it to Dickenson on August 2, 1988. After Fleener's final correspondence with Dickenson wherein he confirmed his interest in receiving a child pornography tape, federal and state postal inspectors set up a controlled delivery of a videotape containing child pornography entitled "Family Sex" to Fleener. On September 22, 1988, the controlled delivery was made. Surveillance was set up at the post office where Fleener's post office box was located and at his place of business.

Fleener picked up the package containing the "Family Sex" videotape at his post office box and returned to his place of work. Shortly thereafter, he was arrested and presented with a search warrant for the premises. Upon presentation of the warrant, Fleener directed the authorities to a heating vent in the basement of the company where he worked. The "Family Sex" tape was hidden inside. Fleener also gave the authorities consent to search his car. Under the seat of the car the postal inspector found a blank video tape inside the mailing envelope that had originally contained the "Family Sex" video cassette tape.

Fleener also led the authorities to a set of built-in shelves with a hidden bottom shelf. Inside the postal inspectors found 27 sexually explicit videotapes and numerous letters in a big box. Among the videotapes found were three copies of the same tape Fleener had mailed to Dickenson as well as the master tape from Anthony Enterprises.

At Fleener's residence the inspectors found two video cassette recorders with which Fleener had duplicated videotapes for redistribution. At his residence Fleener signed a Warning and Waiver of Rights form and gave Inspector Reeves a statement, wherein he admitted that he was the holder of post office box 1361. He also admitted having requested and receiving the "Family Sex" tape from "Chris." Fleener further stated that he had sent the tape to "Chris" but denied that the tape depicted minors. At this time, Fleener also authorized the postal authorities to intercept all mailings to his post office box.

On January 18, 1989, Fleener pled guilty to two counts of a superseding indictment charging him with having caused the mailing of obscene material in violation of 18 U.S.C. § 1461. As to the three remaining counts of the superseding indictment charging him with 1) mailing child pornography (Count I), 2) reproducing child pornography (Count II), and 3) receiving child pornography (Count IV), all in violation of 18 U.S.C. § 2252, Fleener waived his right to a jury trial and proceeded to a bench trial before the district court. On January 20, 1989, the district court found Fleener guilty as to each of the three violations of 18 U.S.C. § 2252. Sentencing was set as to all five counts for March 29, 1989.

At the sentencing hearing the district court, over the United States' objection, reduced Fleener's offense level by two for acceptance of responsibility, resulting in an offense level of 16. In light of appellee's criminal history category of one, the court established the Guideline range at 21 to 27 months' imprisonment and a fine range of $5,000 to $50,000. The district court sentenced Fleener to 21 months' imprisonment and a $5,000 fine as well as a $250 special penalty assessment, and a three year term of supervised release.

## II.

The United States argues on appeal that the district court's application of the Guidelines is incorrect. Appellate review of sentences under the Guidelines is governed by

18 U.S.C. § 3742, which provides in relevant part:

> The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous....

18 U.S.C. § 3742(e) (Supp.1989).

Section 3E1.1 of the Guidelines permits a two-level reduction in the sentence of a defendant who "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." Application Note 5 to section 3E1.1 sets forth the standard of review for reductions made under this provision: "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review and should not be disturbed unless it is without foundation." *See United States v. Luster*, 889 F.2d 1523 (6th Cir.1989). Finally, this circuit has recently held that a district court's acceptance of responsibility determination will be reviewed under a "clearly erroneous" standard of review. *United States v. Wilson*, 878 F.2d 921 (6th Cir.1989) (quoting *United States v. Thomas*, 870 F.2d 174, 176 (5th Cir.1989) ("[b]ecause the trial court's assessment of a defendant's contrition will depend heavily on credibility assessments, the 'clearly erroneous' standard will nearly always sustain the judgment of the district court in this area"). *See also Luster*, 889 F.2d at 1525.

The thrust of the government's argument on appeal is that the entrapment defense raised by Fleener at trial as to three of the five charges is inconsistent with the notion of acceptance of responsibility. At trial, Fleener took the stand to claim that he was entrapped. He testified that even though he had been interested in "adult type entertainment" since 1980, he had no interest in child pornography. When questioned about his relationship with "Chris," Agent Dickenson, Fleener testified that he had never encountered a woman who shared his interest in bestiality and further stated that he would have "loved to have

gotten together with her at some point." Fleener claimed that it was his interest in "Chris" and desire to keep her satisfied that lead him to seek child pornography.

Fleener maintained throughout the trial that he had no predisposition to deal in child pornography previous to his contact with Agent Dickenson. The district court found otherwise stating: "... his testimony that he never considered child pornography prior to his correspondence with the government agent the Court finds simply incredible." The government does not dispute these findings. Rather, it objects to the court's application of the guidelines to those facts.

■ The defense of entrapment is available to a defendant when there is no evidence of defendant's predisposition to commit the crime and the criminal conduct was "the product of the *creative* activity of law enforcement officials." *United States v. Lasuita*, 752 F.2d 249 (6th Cir.1985) (quoting *Sherman v. United States*, 356 U.S. 369, 372, 78 S.Ct. 819, 820, 2 L.Ed.2d 848 (1958) (emphasis in original)). *See also Sorrells v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932). The entrapment defense focuses on the defendant's intent or predisposition to commit the crime. *United States v. Russell*, 411 U.S. 423, 429, 93 S.Ct. 1637, 1641, 36 L.Ed.2d 366 (1973); *Lasuita*, 752 F.2d at 253. The Supreme Court has characterized the entrapment defense as follows:

> It is assumed that the accused is not denying his guilt but is setting up special facts in bar upon which he relies regardless of his guilt or innocence of the crime charged. This, as we have seen, is a misconception. The defense is available, not in the view that the accused though guilty may go free, but that the Government cannot be permitted to contend that he is guilty of a crime where the government officials are the instigators of his conduct. The federal courts in sustaining the defense in such circumstances have proceeded in the view that the defendant is not guilty.

*Sorrells*, 287 U.S. at 452, 53 S.Ct. at 216.

The government argues that by asserting the entrapment defense Fleener neces-

sarily is claiming that the government officials instigated his conduct, not that he was responsible for his own crimes. Thus, the entrapment defense would be inconsistent with a finding of acceptance of responsibility. This argument, while superficially plausible, does not comport with the acceptance of responsibility provision. First, Section 3E1.1(b) of the Guidelines states that a defendant "may be given consideration under this section without regard to whether his conviction is based upon a guilty plea or a finding of guilt by the court or jury or the practical certainty of conviction at trial." A plea of guilty does not entitle a defendant to a sentencing reduction as a matter of right. § 3E1.1(c). Moreover, Application Note 2 to § 3E1.1 provides that "[c]onviction by trial does not preclude a defendant from consideration under this section. A defendant may manifest sincere contrition even if he exercises his constitutional right to a trial...."

■ The Supreme Court's characterization of the entrapment defense in *Sorrells* reveals that the defense is tantamount to a plea and/or finding of not guilty. Although the Guidelines provision at issue does not specifically discuss the entrapment defense, it does address the situation where a defendant pleads not guilty and puts the government to its proofs at trial. Section 3E1.1(b) allows the sentencing judge to consider a reduction for acceptance of responsibility regardless of whether the defendant pled guilty or not guilty. To carry the logic one step further, an entrapment defense should be treated similarly. Therefore, we find that the district court did not err in considering a reduction for acceptance of responsibility even though appellee raised an entrapment defense at trial. Such a defense is no less inconsistent with the Guidelines provision than is a plea of not guilty, which does not raise an absolute bar to a court's consideration. At the sentencing hearing, the district court, in ruling on the United States' objection to the two-level reduction for acceptance of responsibility stated:

> The entrapment defense, while at best was flimsy, is nevertheless a legitimate defense which is available to the defendant. I am convinced in my mind that there was no entrapment in this case, but that does not mean the defendant is not entitled to assert that defense. I agree that he is probably entitled to the two level reduction for acceptance of responsibility. He did turn over the material to the agents at the time of the execution of the search warrant and I think he is entitled to that.

From a review of the record it is clear that the district court explicitly linked the two-level reduction for acceptance of responsibility to the fact that Fleener voluntarily turned over the tapes and letters to the agents at the time the search warrant was executed. The background commentary to Section 3E1.1 states that "a defendant who clearly demonstrates a recognition and affirmative acceptance of personal responsibility for the offense by taking, in a timely fashion, *one or more* of the actions listed above (or some equivalent action) is appropriately given a lesser sentence...." (Emphasis added.) The background commentary is referenced to Application Note 1 to 3E1.1, which lists seven noninclusive considerations in determining whether a defendant qualifies for the provision. Application Note 1(e) lists "voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense" as an appropriate factor to consider in applying the acceptance of responsibility provision. The district court, therefore, did not err in taking into consideration appellee's conduct at the time of arrest. Evaluated under a "clearly erroneous" standard, this Court finds no error. Accordingly, we hereby AFFIRM the findings of the district court.