RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION:  2001 FED App. 0095P (6th Cir.)
File Name:  01a0095p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
       *Plaintiff-Appellee,*

v.

ROSCOE R. BEATY,
       *Defendant-Appellant.*

Nos. 99-5756/6115

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
Nos. 92-00931; 93-00572; 94-00568; 95-00259;
95-00024—John T. Nixon, District Judge.

Argued:  January 23, 2001

Decided and Filed:  April 2, 2001

Before:  BATCHELDER and CLAY, Circuit Judges;
POLSTER, District Judge.[*]

———————————

### COUNSEL

**ARGUED:** Peter J. Strianse, TUNE, ENTREKIN & WHITE, Nashville, Tennessee, for Appellant.  William Cohen, ASSISTANT UNITED STATES ATTORNEY, Nashville,

———————————————

[*] The Honorable Dan Aaron Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

Tennessee, for Appellee. **ON BRIEF:** Peter J. Strianse, TUNE, ENTREKIN & WHITE, Nashville, Tennessee, for Appellant. William Cohen, Van S. Vincent, ASSISTANT UNITED STATES ATTORNEYS, Nashville, Tennessee, for Appellee.

———————

**OPINION**

———————

POLSTER, District Judge. Defendant Roscoe R. Beaty appeals from his jury conviction and sentence for operating an illegal gambling business and the district court's grant of summary judgment in favor of the government in four related civil forfeiture actions. For the following reasons, we **AFFIRM**.

## I.   BACKGROUND

### A.   Criminal Case (Case No. 99-5756)

Federal law enforcement officers arrested Beaty on February 23, 1995, after a lengthy investigation of a gambling ring involving Beaty and several other individuals. On March 21, 1995, a grand jury returned a two-count indictment against Beaty and six other defendants. Count One charged that between February 1992 and February 1995, the defendants conspired to conduct an illegal gambling business in violation of 18 U.S.C. § 1955.[1] Count Two charged that during the same period, the defendants ran a numbers operation in violation of 18 U.S.C. §§ 2 and 1955.[2]

———————

[1] The grand jury identified five separate instances in which the defendants possessed money and gambling paraphernalia in furtherance of the conspiracy and in violation of 18 U.S.C. § 371.

[2] The government subsequently filed a superseding indictment charging Beaty with a third count seeking forfeiture of $2,097,501.93 and a cell phone used in commission of the felony charged in Count Two. The district court denied Beaty's motion to dismiss the superseding

Beaty's criminal case proceeded to trial on November 5, 1996. That trial ended in a mistrial when the jury was unable to reach a verdict. Beaty's second jury trial commenced on January 12, 1999. At trial, Beaty admitted that he had engaged in the conduct charged, but argued that the government should be estopped from prosecuting him because it had led him to believe that purchasing a federal gambling stamp each year and paying monthly taxes on his gross wagers would immunize him from prosecution. Beaty offered the testimony of a former federal agent who confirmed that in the mid-1970s, gamblers were told that if they purchased a stamp they would not be the target of a federal investigation and their gambling activities would not be subject to federal prosecution.

The government countered this testimony by noting that the stamp itself contained the following language:

> Please note that this is a special tax stamp in receipt for payment of Federal tax. This does not authorize anyone to begin or continue trade or business contrary to State or local laws. Also, payment of the tax imposed by Chapter 35 of the Internal Revenue Code does not exempt anyone from penalties or punishment for violation of Federal, State, or local laws concerning wagering activities.

The government also offered the testimony of several gamblers who admitted that they knew the stamp would not immunize them from federal prosecution. One of those witnesses testified that during the course of the investigation an agent informed him that the stamp offered no protection from federal prosecution for wagering activities. The witness claimed that he had related his conversation with the agent to Beaty after one of the raids on their organization.

---

indictment on double jeopardy grounds. Beaty appealed the denial of his motion to the Sixth Circuit, which affirmed, and then sought review by the U.S. Supreme Court. The district court allowed the case to go to trial while Beaty's petition for certiorari was pending.

During the trial, the district court instructed the jury on the defense of entrapment by estoppel. Over defense counsel's objections, the court also provided the jury with the following instruction on deliberate ignorance:

No one can avoid responsibility for a crime by deliberately ignoring the obvious. If you're convinced that the defendant deliberately ignored a high probability that he was involved in an illegal gambling operation under the federal laws, then you may find that he knew what he was doing.

But to find this, you must be convinced beyond a reasonable doubt that the defendant was aware of a high probability that he was involved in an illegal gambling operation under the federal laws and the defendant deliberately closed his eyes to what was obvious.

Carelessness or negligence or foolishness on his part is not the same as knowledge and is not enough to convict.

The court adopted this instruction verbatim from Pattern Criminal Jury Instructions for the Sixth Circuit § 2.09 (West 1991).

After deliberating for less than two hours, the jury returned guilty verdicts on both Count One and Count Two. Prior to the Sentencing Hearing, a U.S. Probation Officer provided the district court with a Presentence Investigation Report which recommended that Beaty be granted a two-level reduction in his offense level for acceptance of responsibility pursuant to United States Sentencing Guideline ("U.S.S.G.") § 3E1.1.[3]

---

[3]Section 3E1.1 states that a defendant may receive a two-level decrease in his offense level if he "clearly demonstrates acceptance of responsibility for his offense." U.S. Sentencing Guidelines Manual § 3E1.1 (1998). The Application Notes state: "In rare situations, a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert or preserve issues that do not relate to factual guilt . . . ." *Id.* at cmt.

defense he was estopped from asserting, the district court did not err in granting the government's motion for summary judgment.[5]

### III. CONCLUSION

For the reasons stated above, we **AFFIRM** the judgments of the district court in both the criminal case (Case No. 99-5756) and the civil forfeiture proceeding (Case No. 99-6115).

---

[5]During oral argument, Beaty's counsel argued that the currency seized from Beaty was not proceeds and that an innocent owner defense should apply. Beaty did not raise these arguments in the court below or in his appellate brief. Consequently, the arguments must be deemed waived. *See, e.g.*, *Bauer v. Varity Dayton-Walther Corp.*, 118 F.3d 1109, 1113 (6th Cir. 1997).

The doctrine of collateral estoppel operates when three requirements are met: (1) the issue in the current action and the prior action are identical; (2) the issue was actually litigated; and (3) the issue was necessary and essential to the judgment on the merits. *See, e.g.*, *United States v. Three Tracts of Prop. Located on Beaver Creek, Knott County, Kentucky*, 994 F.2d 287, 290 (6th Cir. 1993). No rule of law precludes a prior criminal conviction from having preclusive effect in a subsequent civil proceeding between the government and the defendant. *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 568 (1951) ("It is well established that a prior criminal conviction may work an estoppel in favor of the government in a subsequent civil proceeding."). Moreover, "[i]n the case of a criminal conviction based on a jury verdict of guilty, issues which were essential to the verdict must be regarded as having been determined by the judgment." *Id.* at 569.

The entrapment by estoppel defense Beaty seeks to raise in the forfeiture proceeding is identical to the defense he presented at his criminal trial. In both the criminal and the civil contexts, Beaty's burden of proof for establishing the defense is the same — preponderance of the evidence. *See, e.g.*, *United States v. Stewart*, 185 F.3d 112, 124 (3d Cir.), *cert. denied*, 528 U.S. 1063 (1999). At trial, Beaty called witnesses and introduced evidence in support of his entrapment by estoppel defense. Therefore, there is little question that he actually litigated the issue. Nor is there any doubt that the jury's determination on the issue was necessary and essential to a judgment on the merits. At trial, the judge specifically instructed the jury to find Beaty not guilty if he established the entrapment by estoppel defense by a preponderance of the evidence. In order to convict Beaty, the jury had to conclude that the preponderance of the evidence did not support the entrapment by estoppel defense. Accordingly, the district court correctly concluded that all three requirements for collateral estoppel had been satisfied.

Because Beaty's sole objection to the district court's grant of summary judgment depends upon the availability of the

The government objected to the recommendation, arguing that Beaty was not entitled to an acceptance of responsibility reduction because he had contested the legality of his conduct. At the Sentencing Hearing, the district court denied Beaty the two-level reduction for acceptance of responsibility and imposed a sentence of twenty-one months imprisonment, two years of supervised release, and a $4,000.00 fine.

On appeal, Beaty argues that the district court erred by: (1) giving a deliberate ignorance instruction to the jurors; and (2) failing to reduce his offense level for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1.

**B. Civil Forfeiture Cases (99-6115)**

Surveillance of Beaty's gambling activities began in early 1992, when a concerned citizen called the Metropolitan Nashville Police Department ("Nashville Police") to report a numbers operation in Nashville, Tennessee. On March 12, 1992, the Nashville Police executed search warrants at various locations, including Beaty's home. The Nashville Police seized numbers tickets and $1,454,788.20 from Beaty's bedroom. Due to the large quantity of money seized, the Nashville Police contacted the Internal Revenue Service ("I.R.S."), and the two agencies began a joint investigation of Beaty's numbers operation. On October 21, 1992, the government filed a complaint seeking forfeiture of $1,476,147.07 seized in the raid on March 12, 1992. On April 28, 1993, the district court agreed to stay the proceeding pending resolution of any related criminal cases.

After continued surveillance of the numbers operation, federal law enforcement officers executed another search of Beaty's home and various other locations on June 24, 1993. The officers seized numbers tickets and $514,601.40 from Beaty's home. On July 28, 1993, the government filed a forfeiture complaint seeking the forfeiture of money seized during the search.

---

n.2.

Surveillance of Beaty's numbers operation began again following the execution of the June 1993 search warrants. Observation of gambling-related activities over the next year led to the execution of another set of search warrants in early June 1994. Once again, the government seized money and gambling paraphernalia from Beaty's home and other locations. On July 15, 1994, the government filed another forfeiture complaint seeking the money seized during the prior month's searches.

Continued surveillance of Beaty's numbers operation caused federal authorities to execute a fourth and final set of search warrants on February 23, 1995. That search resulted in the seizure of cash, numbers tickets, and betting pads, and led to the arrest and eventual conviction of Beaty. On March 17, 1995, the government filed a forfeiture complaint seeking money seized in the raids on February 23, 1995.

On February 14, 1997, the district court reinstated the first forfeiture complaint to the active docket and vacated the stay. The district court consolidated the four forfeiture proceedings into one case on September 30, 1998. In October 1998, the government moved for summary judgment. Beaty opposed the motion for summary judgment by arguing that there was a genuine issue of material fact regarding his alleged entrapment by the federal government.

On July 12, 1999, the district court granted the government's motion and entered a decree of forfeiture. Beaty filed a timely Notice of Appeal, after which the district court issued an order explaining its reasons for granting the motion. In the order, the district court indicated that it granted the motion for summary judgment after concluding that Beaty had litigated the entrapment by estoppel issue during the related criminal proceeding and that as a result, the defense was barred by the doctrine of collateral estoppel. On appeal, Beaty argues that the district court erred by granting the government's motion for summary judgment because his defense of entrapment by estoppel raised factual issues that should have precluded an award of summary judgment.

case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In a forfeiture action, the government has the initial burden of showing probable cause to support the forfeiture. *United States v. Any and All Radio Transmission Equip.*, 218 F.3d 543, 548 (6th Cir. 2000). Probable cause exists where there is "a reasonable ground for belief of guilt, supported by less than prima facie proof, but more than mere suspicion." *United States v. Twenty-Two Thousand, Two Hundred Eighty-Seven Dollars ($22,287), U.S. Currency*, 709 F.2d 442, 446-47 (6th Cir. 1983) (quoting *United States v. One 1978 Chevrolet Impala*, 614 F.2d 983, 984 (5th Cir. 1980)). In addition to establishing probable cause for the seizure, the government must establish probable cause that there was a nexus between the property seized and the illegal conduct giving rise to its forfeiture. *United States v. Real Prop. Known and Numbered as 429 S. Main St., New Lexington, Ohio*, 52 F.3d 1416, 1418 (6th Cir. 1995). Once the government establishes probable cause for the forfeiture and satisfies the nexus requirement, the burden shifts to the claimant, who must prove by a preponderance of the evidence that the property is not subject to forfeiture. *Any and All Radio Transmission Equip.*, 218 F.3d at 548. "It is well settled that the government is entitled to a judgment of forfeiture upon an unrebutted showing of probable cause." *Id.* (quoting *United States v. 566 Hendrickson Blvd.*, 986 F.2d 990, 995 (6th Cir. 1993)).

Beaty contends that the district court erred in granting summary judgment because his entrapment by estoppel defense raises a genuine issue of material fact as to the existence of probable cause. The government argues that the district court's award of summary judgment was proper because the doctrine of collateral estoppel precluded Beaty from raising the entrapment by estoppel defense. Rather than addressing the applicability of the doctrine of collateral estoppel, Beaty instead focuses upon the fact intensive nature of the entrapment by estoppel defense.

was not warranted in this case.[4]  There is nothing in the record to suggest that this determination was clearly erroneous.  For this reason, we affirm the determination of the court below.

## C.  Collateral Estoppel

With regard to the civil forfeiture action, Beaty argues that the district court erred by granting summary judgment in favor of the government after determining that his entrapment defense was precluded by the doctrine of collateral estoppel.

We review a district court's grant of summary judgment de novo making all reasonable inferences in favor of the non-moving party.  *E.E.O.C. v. University of Detroit*, 904 F.2d 331, 334 (6th Cir. 1990).  Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  When we review a motion for summary judgment, the evidence, all facts, and any inferences that may be drawn from the facts must be viewed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  To prevail, the party opposing summary judgment must show sufficient evidence to create a genuine issue of material fact.  *Klepper v. First Am. Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990).  A mere scintilla of evidence is insufficient, as "there must be evidence on which the jury could reasonably find for the [non-movant]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Entry of summary judgment is appropriate, "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

---

[4] At the Sentencing Hearing, the judge stated: "I am not going to give Mr. Beaty credit for acceptance of responsibility.  I don't think it falls within the rare instance of going to trial and being given credit for acceptance of responsibility."

## II.  ISSUES ON APPEAL

### A.  Deliberate Ignorance Instruction

Citing *United States v. Lara-Velasquez*, 919 F.2d 946, 951 (5th Cir. 1990), Beaty contends that the district court erred by giving a deliberate ignorance instruction in the absence of evidence showing that:  (1) the defendant was subjectively aware of a high probability of the existence of illegal conduct; and (2) the defendant purposely contrived to avoid learning of the illegal conduct.  Beaty argues that because the government failed to make such a showing, there is a substantial risk that the jury convicted him based upon a mere negligence standard rather than proof beyond a reasonable doubt.

We review a district court's choice of jury instructions according to an abuse discretion standard.  *United States v. Prince*, 214 F.3d 740, 761 (6th Cir.), *cert. denied, White v. United States*, 121 S. Ct. 417 (2000).  A trial court has broad discretion in drafting jury instructions and does not abuse its discretion unless the jury charge "fails accurately to reflect the law."  *United States v. Layne*, 192 F.3d 556, 574 (6th Cir. 1999), *cert. denied*, 529 U.S. 1029 (2000) (quoting *United States v. Busacca*, 863 F.2d 433, 435 (6th Cir. 1988)).  Moreover, no single provision of the jury charge may be viewed in isolation, rather, the charge must be considered as a whole.  *United States v. Lee*, 991 F.2d 343, 350 (6th Cir. 1993).  We will reverse a judgment based upon an improper jury instruction "'only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial.'"  *United States v. Harrod*, 168 F.3d 887, 892 (6th Cir.), *cert. denied*, 526 U.S. 1127 (1999) (quoting *Beard v. Norwegian Caribbean Lines*, 900 F.2d 71, 72-73 (6th Cir. 1990)).

Beaty's claim that the district court erred by giving a deliberate ignorance instruction in the absence of sufficient evidence is controlled by *United States v. Mari*, 47 F.3d 782 (6th Cir. 1995).  In *Mari*, this Court held that when a district court gives a deliberate ignorance instruction that does not misstate the law but is unsupported by sufficient evidence, it is, at most, harmless error.  *Id.*  In subsequent cases we have

reaffirmed our thinking in *Mari*. *See, e.g.*, *United States v. Monus*, 128 F.3d 376, 390-91 (6th Cir. 1998) ("[E]ven if there had been insufficient evidence to support a deliberate ignorance instruction, we must assume that the jury followed the jury charge and did not convict on the grounds of deliberate ignorance.").

The court below strictly adhered to the wording of the Sixth Circuit Pattern Jury Instruction which accurately states the law of this Circuit. *See, e.g.*, *United States v. Gullet*, 713 F.2d 1203, 1212 (6th Cir. 1983) ("[Instruction which permits knowledge to be inferred] does not authorize a conviction based on negligent behavior, but rather prevents a criminal defendant from escaping conviction merely by deliberately closing his eyes to the obvious risk that he is engaging in unlawful conduct." ). The pattern instruction does not encourage a conviction based upon mere negligence, and indeed, expressly cautions against such a finding. Pattern Criminal Jury Instructions for the Sixth Circuit § 2.09 (West 1991) ("Carelessness or negligence or foolishness on his part is not the same as knowledge and is not enough to convict."). Moreover, at several other points during its jury charge, the district court reminded the jury that it could not convict Beaty unless it found him guilty beyond a reasonable doubt.

Because the district court did not misstate the law regarding deliberate ignorance and the instructions, viewed as a whole, were not confusing, misleading, or prejudicial, we conclude that the district court did not commit reversible error in giving the deliberate ignorance instruction.

## B.   Acceptance of Responsibility

Beaty further contends that the district court erred by refusing to reduce his offense level for acceptance of responsibility. We disagree.

A district court's decision regarding whether to reduce a defendant's offense level for acceptance of responsibility is a factual determination that is subject to a clearly erroneous

standard of review. *United States v. Carroll*, 893 F.2d 1502, 1511-12 (6th Cir. 1990). As this Court has noted:

> Because the trial court's assessment of a defendant's contrition will depend heavily on credibility assessments, the "clearly erroneous" standard will nearly always sustain the judgment of the district court in this area. Indeed, the guidelines specifically state that "[t]he sentencing judge is in a unique position to evaluate the defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review and should not be disturbed unless it is without foundation."

*Id.* (quoting *United States v. Thomas*, 870 F.2d 174, 176 (5th Cir. 1989)).

In support of his contention that he is entitled to a reduction in his offense level, Beaty cites *United States v. Fleener*, 900 F.2d 914 (6th Cir. 1990). In *Fleener*, we held that a district court did not err in granting a reduction for acceptance of responsibility where a defendant went to trial in order to raise an entrapment defense. *Id.* Although our decision in *Fleener* recognizes that it is within a district court's discretion to grant a reduction for acceptance of responsibility to a defendant who proceeds to trial to raise an entrapment defense, it does not stand for the proposition that any defendant who raises an entrapment defense is entitled to a reduction in his offense level for acceptance of responsibility. Rather, *Fleener* stands for the proposition that the decision of whether to grant a reduction for acceptance of responsibility to a defendant who has proceeded to trial to present an entrapment defense rests with the discretion of the trial judge. The trial judge in this case expressly recognized that in rare circumstances a court may grant a defendant who proceeds to trial a reduction for acceptance of responsibility, but found that such a reduction